IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CRIMINAL ACTION NO. H-11-61-2 |
| v. | § | |
| | § | CIVIL ACTION NO. H-17-0776 |
| RAYMOND TIERRA JOHNSON. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant Raymond Tierra Johnson, proceeding *pro se*, filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Docket Entry No. 832). The Government filed a response, seeking denial of section 2255 relief. (Docket Entry No. 844.) No further pleadings were filed by defendant.

Having reviewed the section 2255 motion, the Government's response, matters of record, and the applicable law, the Court DENIES the section 2255 motion for the reasons that follow.

*Background and Claims*

A jury found defendant guilty of one count of conspiracy to commit bank robbery by force, violence, and intimidation; two counts of bank robbery; two counts of use of a firearm in furtherance of a crime of violence; and one count of hostage taking. The Court sentenced him to 744 months' imprisonment and five years' supervised release. Defendant's conviction was affirmed on direct appeal. *United States v. Smith*, 822 F.3d 755, 762 (5th Cir. 2016).

Defendant raises the following grounds for habeas relief under section 2255:

1. Trial counsel was ineffective in failing to

    a. properly investigate the case;

    b. object to evidence of the firearm;

    c. call rebuttal witness;

    d. object to the jury charge;

    e. object to the timing of the sentencing hearing; and

    f. challenge the PSR.

2. The trial court erred in assessing a two-level enhancement for use of a minor during commission of the offense in calculating his sentencing guideline range.

In compliance with the Court's order, trial counsel submitted an affidavit under seal, testifying as to the facts surrounding defendant's claims for ineffective assistance of counsel. (Docket Entry No. 841.) The Government argues that Defendant's habeas claims are without merit and that the section 2255 motion should be denied.

*Legal Standards*

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to section 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the district court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

Section 2255 is an extraordinary measure, and cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

The pleadings of a *pro se* prisoner litigant are reviewed under a less stringent standard than those drafted by an attorney, and are provided a liberal construction. *Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, a *pro se* litigant is still required to provide sufficient facts to support his claims, and "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Accordingly, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertion on a critical issue in his *pro se* petition . . . to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

### *Ineffective Assistance of Trial Counsel*

The United States Supreme Court's decision in *Strickland v. Washington* provides the familiar two-pronged test for establishing a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot

3

be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984). A court need not address both components of the inquiry if the defendant makes an insufficient showing on one. *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

A counsel's performance is strongly presumed to fall within the wide range of reasonable professional assistance. *Premo v. Moore*, 562 U.S. 115, 121 (2011). To overcome that presumption, a habeas petitioner must "show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* at 121-22 (internal quotations omitted). The standard for judging counsel's representation is a deferential one. "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Id.*

Defendant contends that trial counsel was ineffective in the following instances.

*Failure to Investigate the Case*

Defendant claims that trial counsel was ineffective in failing to investigate the case or discuss the evidence with him. Specifically, defendant contends that counsel failed to "uncover evidence that if he utilized at trial would have prove[d] to the jury that the cooperating witness was unreliable and untruthful"; failed "to seek expert testimony to explain to the jury the effects of the combination of powerful controlled substances on the

4

human body, memory and perception"; failed "to investigate adequately the mental capacity history of the government witness"; and failed "to investigate the government witness, prior criminal history, whether he had made full disclosure to the authorities pursuant to his plea agreement and to calculate before the jury the criminal liability exposure based on relevant conduct versus the 5K1.1 break."

In responding to defendant's claims of ineffective assistance, trial counsel submitted to the Court an affidavit in which he testifies as follows:

> In one of my fi[r]st visits to Raymond Johnson at the Joe Corley Detention Center, he advised me that he had checked me out and he knew my qualifications. He advised me that he didn't need to discuss all of the aspects of his case because he trusted me. During many of our visits, Raymond Johnson did not want to discuss his case, but instead wanted to discuss football. However, I always discussed the status and specifics of [his] case with him. I visited Raymond Johnson over 30 times at the jail and sent him 5 letters regarding his case.
>
> To investigate and prepare the case I reviewed all of the discovery provided by the government in the case. Additionally, I filed a motion with the court and asked the court to approve funds for me to hire an investigator. The court approved my motion and I hired an investigator, who is a retired Harris County Sheriff's Office Deputy. The investigator retired at the rank of Lieutenant of the Homicide Division. The investigator and I spent many hours discussing the case and investigating issues and defenses to effectively represent Raymond Johnson. The investigator and I traveled to the scene of the Chase Bank in Pearland to view the scene and to see the perspective of witnesses and the police officer who arrested Raymond Johnson. We went inside the bank and investigated the interior of the bank. We investigated the outside of the bank and reviewed the surrounding area of the bank from all points of access and visibility. We investigated the bank from the Walmart parking lot that was toward the rear of the bank. We reviewed the witness statements and the video footage of the robbery and compared both to what we observed at the scene. The investigator and I also reviewed all of the cell phone records, evidence and reports in the case.

I filed a motion with the court and asked the court to approve funds for me to hire an expert in the area of DNA testing and analysis. The court approved the motion and I hired Dr. Elizabeth Johnson. I forwarded the discovery relating to the government's DNA analysis to Dr. Johnson. I spent many hours speaking to Dr. Johnson regarding the DNA discovery and results. I spent many hours speaking to Dr[.] Johnson and she assisted me in preparing cross examination questions for the government's DNA expert. I used this knowledge and preparation to cross examine the government's DNA expert witness during the trial.

In further preparation for trial, I contacted the government prosecutors and asked them to arrange meetings with several of their witnesses so I could ask the witnesses questions in preparation for trial. I met with the government's FBI cell phone expert. I asked the FBI cell phone expert many questions and took detailed notes of the expert's answers. I also met with many of the bank employees that witnessed one or more of the bank robberies in question and who would testify as possible witnesses at the trial. At these meetings I asked the bank employees questions relevant to their statements, the evidence and in preparation of trial. I used this information to assess their credibility and knowledge of any evidence and possible testimony relating to Raymond Johnson and the charged crimes.

I met with the prosecutors many times to discuss the case with them and to review their files and all of the evidence and reports in the government's possession. I also attended many meetings with attorneys representing the other defendants.

I met with Raymond Johnson many times and we went over the discovery related to the charges. I discussed all options with Raymond Johnson, including trial, plea agreements, the United States Sentencing Guidelines and the potential for cooperation with the government. I negotiated a plea agreement with the government. I discussed the plea agreement with Raymond Johnson who advised me that he did not want to plead guilty and that he was not the type to cooperate against anyone. Mr. Johnson advised me that he wanted to proceed to a jury trial.
I worked very hard preparing for trial and I worked very hard during the trial. I read all of the discovery relating to the case and I took detailed notes of such. I used these notes to prepare for trial. I read all of the witness statements and prepared detailed notes and cross examination questions. I read and reviewed

all documents, statements and discovery relating to all of the codefendants and those listed as government witnesses. I prepared detailed notes and cross examination questions relating to all testifying codefendants and witnesses. I read and reviewed all of the investigative reports and I prepared detailed notes and cross examination questions relating to such. I researched the law and all legal issues that in my legal experience were relevant to the charges and issues in the case. I met with Raymond Johnson and the investigator to formulate as much of a defense as possible. I went over all of the government's evidence and discovery with Raymond Johnson. I showed Raymond Johnson pictures taken from the surveillance videos in the banks which depicted a person which the government believed was Raymond Johnson and who several codefendants stated was Raymond Johnson.

In response to Raymond Johnson's specific arguments in his 2255 writ that have not been previously addressed:

> I never advised Raymond Johnson that "everything was under control" and to leave the trial to me.
>
> In my opinion I did not see any need for an expert "regarding the effects of the combination of powerful controlled substances on the human body, memory, and perception" as there was no evidence that such was relevant to a defense or the case.
>
> The investigator and I did investigate the mental capacity history of the government witnesses and we did not find any evidence that the witnesses were not competent to testify.
>
> The investigator and I did investigate the criminal history of the government witnesses. The government provided me with the criminal histories of the government co-defendant witnesses and their plea agreements. I questioned the government witnesses who were charged with crimes about any promises made to them by the government any [*sic*] influence a potential 5K1.1 may have on their testimony.
>
> The investigator and I investigated the case and we could not find any witnesses that could contradict the government's theory of the case. Raymond Johnson did not provide me with any names of witnesses that could testify on his behalf as fact witnesses or alibi witnesses. Raymond Johnson was arrested at the bank.

> During trial I continued to prepare daily for the days [*sic*] anticipated evidence and witnesses. I prepared for the next day of trial by working the night before. During trial I did everything I could in my experience to make proper objections to preserve error. I also used all of my experience and knowledge to cross examine the government's witnesses.
>
> After the guilty verdict I met with Raymond Johnson approximately 6 times in preparation for the sentencing hearing. I attended the presentence interview with the probation officer and Raymond Johnson. I reviewed the presentence report with Raymond Johnson. I prepared and filed a motion asking Judge Miller to continue the sentencing hearing so that I could have additional time to research objections to the presentence report. I researched and prepared objections to the presentence report. I met with Raymond Johnson and discussed these objections. I prepared diligently for the sentencing hearing. After the sentence was imposed, Raymond Johnson advised me that he wanted to appeal the conviction and judgment and sentence, so I filed a notice of appeal for him.

(Docket Entry No. 841.)

In order to prevail on an ineffective assistance claim for failing to investigate, a habeas petitioner must state with specificity what the investigation would have revealed and how the evidence would have altered the outcome of the trial. *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Additionally, the petitioner must show under *Strickland* that his attorney's failure to investigate caused him actual prejudice – that is, but for counsel's deficient performance, there is a reasonable probability that the result of the trial would have been different.

In none of his alleged instances has defendant presented factual allegations establishing a failure to investigate or communicate. Defendant does not allege with specificity what further investigation would have revealed and how it would have altered the

outcome of the case. *Id.* at 1003. That is, he fails "to suggest with specificity what exculpatory evidence could have been uncovered by a more thorough investigation by [his] counsel, and has failed to show that counsel's [purported] failure to follow up on [his] leads was unreasonable." *Id.* at 1002. Nor does he identify with any specificity what additional communication was necessary or show how it would have changed the results of the trial. Defendant's conclusory allegations of inadequate investigation and communication are unsupported in the record and insufficient to establish deficient performance and actual prejudice under *Strickland*.

Defendant fails to establish ineffective assistance of counsel, and habeas relief is unwarranted.

*Failure to Object to Testimony of the Firearm*

Defendant claims that counsel was ineffective because he "failed to object to the gun charges and cooperated with the Government when failing to prevent these matters from the jury." (Docket Entry No. 832, p. 7.)

The record shows that defendant was charged with two counts of use of a firearm in furtherance of a crime of violence. The issue was presented to the jury, and the jury found defendant guilty on both counts. In arguing this claim, defendant presents no legal authority or factual allegations showing that, had counsel objected to the firearm counts, this Court would have dismissed the charges.

Because the firearm counts were before the Court and the jury, the Government was properly allowed to present evidence of the firearms used or exhibited during commission of the bank robbery. Defendant presents no legal authority or evidence in the record establishing that, had counsel objected to evidence of the firearms, this Court would have sustained the objection. Trial counsel was not deficient in failing to make groundless objections to admissible evidence.

To any extent defendant may be attempting to argue that bank robbery is not a crime of violence for purposes of the firearm charges, his argument is foreclosed by Fifth Circuit Court of Appeals precedent. *See United States v. Brewer*, 848 F.3d 711, 715–16 (5th Cir. 2017).

Defendant fails to establish ineffective assistance of trial counsel, and habeas relief is unwarranted.

*Failure to Call Rebuttal Witness*

Defendant next claims that trial counsel was ineffective in failing to call witnesses to rebut the testimony of the Government's witnesses. In support, he argues that "[n]umerous Circuit Courts have held that failure of an attorney to call witnesses that would have contradicted the government's version of events constitutes ineffective assistance of counsel that justifies the granting of a new trial." (Docket Entry No. 832, pp. 7–8.) According to defendant, if an attorney does not produce a witness to rebut a government's witness, the attorney is ineffective.

10

Defendant's simplistic rendition of the law is incorrect. As explained by the Fifth Circuit Court of Appeals:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense*. This requirement applies to both uncalled lay and expert witnesses.

*Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted; emphasis added); *accord Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.").

Defendant meets none of these requirements. His conclusory assertion that counsel failed to call rebuttal witnesses is unsupported by evidence in the record, and affords him no basis for habeas relief.

No ineffective assistance of trial counsel is shown, and habeas relief is unwarranted.

*Failure to Object to the Jury Charge*

Defendant argues that trial counsel should have objected to the jury charge. In support, defendant offers the following:

11

> Trial [c]ounsel did not object when the [i]nstruction was given. There was no co-conspirator statement offered, no *Petrozzielo* finding, and no legal basis to give such an instruction by the jury. The prejudice in mentioning the instruction is that it infers that there is a conspiracy for them to admit any statement made in its furtherance. Having no statements to consider, the jury is being told there is a conspiracy, thus invading the fact finding function of the jury.

(Docket Entry No. 832, pp. 9–10.)

Absent from defendant's argument is any identification of the jury instruction or portion of the jury charge being challenged by defendant. Without a specific challenge to a specific instruction or portion of the jury charge, there is nothing for the Court to consider on section 2255 review. The Court's recollection of the evidence and testimony in this case, refreshed by a review of the record, finds support for the instructions and charges as presented to the jury. Defendant fails to demonstrate that, had counsel objected to a certain instruction or portion of the jury charge, the objection would have been granted.

Defendant establishes neither deficient performance nor actual prejudice under *Strickland*, and habeas relief is unwarranted.

*Failure to Object to Timing of Sentencing*

Defendant argues that trial counsel should have objected to the timing of the sentencing hearing. Specifically, he asserts that he was sentenced within 35 days of issuance of the PSR, in violation of Rule 32(b)(6)(A) of the Federal Rules of Criminal Procedure, and that he did not waive his rights to the 35-day delay.

Defendant's argument is refuted by the record. The original PSR was made available to the parties on July 12, 2013. Trial counsel moved for an extension of time to file objections on July 25, 2013, and the motion was granted. (Docket Entries No. 420, 428.) The sentencing hearing was held on September 12, 2013, approximately 60 days after the PSR was disclosed. Even assuming the sentencing hearing had been held less than 35 days after issuance of the PSR, defendant establishes no actual prejudice caused by counsel's failure to object.

Defendant establishes neither deficient performance nor actual prejudice under *Strickland*, and habeas relief is unwarranted.

*Failure to Challenge the PSR*

Defendant further claims that counsel failed to raise any objections to the PSR or file any supplements. As support, he proffers nothing more than his observation that a PSR is very important and attorneys should review them carefully so that they may make the necessary objections and present the defendant's case. (Docket Entry No. 832, p. 11.)

Defendant offers no specifics as to either omitted objections or supplemental information in his case, and his conclusory allegation of deficient performance is unsupported in the record.

Regardless, the record shows that trial counsel filed several objections to the PSR, which he urged at the sentencing hearing. (Docket Entry No. 488.) Defendant presents no factual allegations as to any supplemental PSR information that counsel should have filed.

In short, defendant establishes neither deficient performance nor actual prejudice under *Strickland*, and habeas relief is unwarranted.

### *Sentencing Error*

Defendant argues that the Court erred in assessing a two-level enhancement for use of a minor during commission of the offense in calculating his sentencing guideline range. However, his argument raises no cognizable ground for relief under section 2255.

It is well settled under Fifth Circuit precedent that a claim that the district court erred in calculating a defendant's offense level under the sentencing guidelines cannot be raised or considered in a section 2255 proceeding. *United States v. Brown*, 8 F.3d 22 (5th Cir. 1993). *See also United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) ("Relief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. . . . A district court's technical application of the Guidelines does not give rise to a constitutional issue.").

Moreover, defendant's argument is foreclosed by his direct appeal, wherein the Fifth Circuit affirmed this Court's assessment of the sentencing enhancement. *See Smith*, 822 F.3d at 764–65. An issue raised and decided on direct appeal may not be relitigated in a section 2255 proceeding. *See United States v. Webster*, 392 F.3d 787, 791 (5th Cir. 2004); *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986).

No cognizable ground for habeas relief under section 2255 is presented.

### Evidentiary Hearing

An evidentiary hearing is required "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

Because the motion, files, and records in this case conclusively show that defendant is not entitled to habeas relief, no evidentiary hearing is necessary.

### Conclusion

Defendant's motion to vacate, set aside, or correct his sentence under section 2255 (Docket Entry No. 832) is DENIED. A certificate of appealability is DENIED.

The related civil case in this proceeding, C.A. No. H-17-776, is ORDERED ADMINISTRATIVELY CLOSED.

Signed at Houston, Texas on May 14, 2018.

---
Gray H. Miller
United States District Judge